FILED
2020 NOV 20 PM 1:18
CLERK
U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| NORDIC WATER PRODUCTS AB, and WESTECH ENGINEERING, INC.,<br><br>    Plaintiffs,<br><br>v.<br><br>VEOLIA WATER SOLUTIONS & TECHNOLOGIES SUPPORT,<br><br>    Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING MOTION TO DISMISS**<br><br>Case No. 2:19-CV-00497-JNP<br><br>District Judge Jill N. Parrish |

## INTRODUCTION

Before the court is a motion to dismiss or, in the alternative, transfer or stay, filed by defendant Veolia Water Solutions & Technologies Support ("Veolia" or "Defendant"). *See* ECF No. 28. Veolia moves the court to dismiss this action for lack of personal jurisdiction, improper venue, or lack of subject matter jurisdiction. Veolia alternatively moves the court to transfer the case to the Eastern District of North Carolina for improper venue, to stay the case pursuant to the Federal Arbitration Act, or to decline to exercise declaratory judgment jurisdiction. The court grants the motion to dismiss for lack of personal jurisdiction over Veolia. Because the court finds that it lacks personal jurisdiction over Defendant, it is unnecessary to consider alternative grounds for dismissing, transferring, or staying this action.

## BACKGROUND[1]

Nordic Water Products AB ("Nordic" or "Plaintiff") is a Swedish corporation with its principal place of business in Sweden. It provides equipment used in water purification plants and wastewater treatment plants, including the SuperDisc product at issue in this case. WesTech Engineering, Inc. ("WesTech" or "Plaintiff") is a California corporation with headquarters in Salt Lake City, Utah. WesTech is the exclusive distributor of Nordic's SuperDisc in the United States. Defendant Veolia is a French corporation with its principal place of business in France. It has licensed I. Kruger, Inc. ("Kruger"), a North Carolina corporation with its principal place of business in North Carolina, as its exclusive licensee to market, sell, and distribute products claimed by the patent at issue in this case, United States Patent No. 10,188,971 ("The '971 patent), in the United States, including in the state of Utah.

In 2016, Veolia sued WesTech in the Eastern District of North Carolina, claiming that the SuperDisc infringed its patent, specifically United States Patent No. 8,961,785 ("The '785 patent"). The litigation ended in a settlement agreement, under which WesTech and Nordic were obligated to partially redesign the SuperDisc. The settlement agreement also contemplated the possibility that the U.S. Patent Office would grant Veolia a then-pending patent from the same '785 patent family. It provided that if Veolia believed that WesTech or Nordic's redesigned product infringed a new patent in the '785 family of patents, Veolia would be required to provide notice to WesTech or Nordic Water. The parties would then have 90 days to negotiate a resolution. If they

---

[1] The Court recites the facts in this section according to the allegations in Plaintiffs' complaint and in the light most favorable to Plaintiffs. *See Albers v. Bd. of Cty. Comm'rs*, 771 F.3d 697, 700 (10th Cir. 2014) (quoting *Cressman v. Thompson*, 719 F.3d 1139, 1152 (10th Cir. 2013)) ("At the motion-to-dismiss stage, [the court] must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff.").

were not successful in reaching an agreement within the 90-day period, they would be required to submit their claims to "mandatory binding baseball arbitration."[2] ECF No. 2-5 at 5.

The Patent Office granted Veolia the then-pending patent, now the '971 patent that is the subject of this litigation. Believing that Nordic and WesTech were infringing the '971 patent, Veolia sent a January 30, 2019 letter to WesTech at its Salt Lake headquarters informing WesTech that it was infringing the new patent. WesTech disagreed and notified Veolia that its initial letter was "neither sufficiently specific nor detailed to give Nordic Water or WesTech actual notice of any infringement of the '971 patent." ECF No. 31 at 7. Eventually, at the end of the ninety-day negotiation period, Veolia sent WesTech a chart (ECF No. 31-7) outlining what it believed to be Nordic and WesTech's infringements of the '971 patent. Finding this chart likewise insufficient to establish infringement of the '971 patent, WesTech and Nordic filed the present action on July 16, 2019, seeking a declaratory judgment that they do not infringe the '971 patent and that the '971 patent is invalid.

On October 28, 2019 Veolia filed the present motion to dismiss the case for lack of personal jurisdiction over Veolia under Fed. R. Civ. P. 12(b)(2), for improper venue under Fed. R. Civ. P. 12(b)(3), or for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and the Declaratory Judgment Act, 28 U.S.C. § 2201. Alternatively, Veolia requested that the court decline to exercise declaratory judgment jurisdiction, that it transfer the case to the Eastern District of

---

[2] The parties dispute the scope of the claims required to be submitted to arbitration, a dispute the court need not resolve in deciding this motion.

North Carolina for improper venue, or that it stay the case pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 3&4.[3]

## LEGAL STANDARD

Plaintiffs WesTech and Nordic bear the burden of establishing personal jurisdiction over Defendant Veolia. *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011). When the issue of personal jurisdiction "is raised early on in litigation, based on pleadings (with attachments) and affidavits, that burden can be met by a *prima facie* showing." *Id.* "At the motion-to-dismiss stage, [the court] must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Albers v. Bd. of Cty. Comm'rs*, 771 F.3d 697, 700 (10th Cir. 2014) (quoting *Cressman v. Thompson*, 719 F.3d 1139, 1152 (10th Cir. 2013)). Because this is a declaratory judgment action seeking a declaration of non-infringement of a patent and patent invalidity, this court follows precedent of the United States Court of Appeals for the Federal Circuit. *See New World Int'l, Inc. v. Ford Glob. Techs., LLC*, 859 F.3d 1032, 1037 (Fed. Cir. 2017) (citation omitted).

---

[3] It should also be noted that these parties are before the court in a different case arising from the same underlying facts. On August 7th, 2019, Veolia filed a Petition to Compel Arbitration in the United States District Court for the Eastern District of North Carolina. Two weeks later, on August 20, 2019, Veolia filed a Motion for Preliminary Injunction in that District asking the court to enjoin Westech and Nordic from proceeding in the suit before this court. On January 22, 2020, District Judge Louise Wood Flanagan denied without prejudice Veolia's Petition to Compel Arbitration and its Motion for Preliminary Injunction and transferred the case to this court. That matter is now pending before the court. *See* Case No. 2:20-cv-00043-JNP.

**DISCUSSION**

Veolia seeks to dismiss this suit on the grounds that this court lacks personal jurisdiction over it. *See* Fed. R. Civ. P. 12(b)(2).  Veolia argues that it lacks minimum contacts with the state of Utah and that its action of sending an infringement letter to WesTech in the forum, without more, is insufficient to establish the minimum contacts necessary for this court to exercise personal jurisdiction over it. WesTech and Nordic respond that Veolia's infringement letter, combined with its exclusive licensing agreement with Kruger, which does business in Utah, are sufficient to establish such minimum contacts.

To determine whether it has personal jurisdiction over Veolia, the court first determines whether exercising personal jurisdiction comports with Utah's long-arm statute and second, whether exercising personal jurisdiction over Veolia comports with principles of constitutional due process. *New World*, 859 F.3d at 1037. Utah's long-arm statute "should be applied so as to assert jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution." UTAH CODE § 78B-3-201(3). Therefore, the court need only address whether the exercise of personal jurisdiction over Veolia comports with due process.

"For personal jurisdiction, the nonresident defendant must have 'certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *New World*, 859 F.3d at 1037 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). A defendant's contacts with the forum state may give rise to either general or specific personal jurisdiction. In this case, Plaintiffs concede that Veolia is not subject to general jurisdiction in Utah and argue only that Veolia is subject to this court's specific personal jurisdiction.

5

## I.        Specific Personal Jurisdiction

To establish that a defendant has sufficient minimum contacts for specific jurisdiction, a "plaintiff must show that the defendant 'has purposefully directed [its] activities at residents of the forum, and [that] the litigation results from alleged injuries that arise out of or relate to those activities.'" *Id.* (quoting *Burger King Corp. v Rudzewicz*, 471 U.S. 462, 472 (1985)). Once a plaintiff has met this burden, "the defendant may point to other factors to determine 'whether the assertion of personal jurisdiction would comport with fair play and substantial justice.'" *Id.* (quoting *Burger King*, 471 U.S. at 476) (internal quotation marks omitted).  A three-part test for specific jurisdiction thus emerges: "(1) whether the defendant 'purposefully directed' its activities at residents of the forum; (2) whether the claim 'arises out of or relates to' the defendant's activities with the forum; and (3) whether assertion of personal jurisdiction is 'reasonable and fair.'" *Id.* (quoting *Inamed Corp. v Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001)).

### A.        Minimum Contacts

The Federal Circuit has held that the first two factors—that the defendant purposefully directed its activities at the forum and that the plaintiff's claim arise out of those forum-related activities—are satisfied when a defendant sends a cease-and-desist letter into a forum, and that letter gives rise to a subsequent declaratory judgment action. *See Jack Henry & Assocs., Inc. v. Plano Encryption Techs. LLC*, 910 F.3d 1199, 1204 (Fed. Cir. 2018); *New World*, 859 F.3d at 1037 ("This court has acknowledged that the defendant purposefully directs his activities at residents of the forum when the defendant sends a cease and desist letter to a potential plaintiff in that particular forum. And a subsequent declaratory judgment action by that potential plaintiff 'arises out of or relates to' the defendant's activity—namely, the cease and desist letter.").

6

Plaintiffs have therefore satisfied the first two factors. They allege that Veolia sent an infringement letter into the forum, and that their suit for declaratory judgment arose out of that activity. If proven, these allegations are sufficient to establish that Veolia has minimum contacts with the forum. *See Jack Henry*, 910 F.3d at 1204; *New World*, 859 F.3d at 1037.

### B.      Reasonableness and Fairness

The court next turns to the third factor: whether exercising personal jurisdiction over Veolia would be reasonable and fair. Plaintiffs allege that in addition to sending the infringement letter into the forum, Veolia has an exclusive licensing agreement with Kruger, under which Kruger has the exclusive right to "market, sell, and distribute disc filters covered by the '971 Patent throughout the United States, including the State of Utah." ECF No. 31 at 11. According to Plaintiffs, this means that Veolia's "enforcement conduct" within this forum is "intentional, continuous, and impactful." *Id.*   In other words, Plaintiffs argue that this activity suffices to render the exercise of personal jurisdiction over Veolia fair and reasonable.

Veolia, on the other hand, argues that the exercise of personal jurisdiction over it would be unfair and unreasonable. It correctly observes that Plaintiffs allege only that Veolia (1) sent the infringement letter into the forum and (2) entered into an exclusive licensing agreement with Kruger, which does business in the United States, including in Utah. ECF No. 28 at 9.[4] It argues

---

[4] There is some confusion as to whether Plaintiffs allege that Kruger is Veolia's exclusive licensee doing business in Utah, *see* ECF No. 2 at ¶ 12, or whether they allege that Veolia itself does business in Utah as Kruger. *See* ECF No. 31 at 16; ECF No. 31-16. Even if Veolia itself is doing business in Utah as Kruger, this alone would be insufficient to establish specific jurisdiction. As explained more fully below, "a patentee's own commercialization efforts" in the forum are irrelevant to the specific jurisdiction analysis, for they are not related to the defense or enforcement of the patent. *See Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1020 (Fed. Cir. 2009).

that these two acts do not suffice as the minimum contacts necessary to establish personal

jurisdiction over it. The court agrees with Veolia.

The Federal Circuit has "repeatedly held" that, due to "policy considerations unique to the

patent context," sending an infringement or cease-and-desist letter alone, without more, is not a

fair or reasonable basis for exercising personal jurisdiction. *Silent Drive, Inc. v. Strong Industries,*

*Inc.*, 326 F.3d 1194, 1206 (Fed. Cir. 2003). In *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*,

148 F.3d 1355, 1360–61 (Fed. Cir. 1998), the court stated:

> A better explanation for this court's statement that cease-and-desist letters alone do
> not suffice to create personal jurisdiction lies in the second prong of the traditional
> Due Process inquiry [here, the third factor]. This prong examines whether the
> maintenance of personal jurisdiction would "comport with 'fair play and substantial
> justice.'" Thus, even though cease-and-desist letters alone are often substantially
> related to the cause of action (thus providing minimum contacts), the "minimum
> requirements inherent in the concept of 'fair play and substantial justice'. . . defeat
> the reasonableness of jurisdiction." Principles of fair play and substantial justice
> afford a patentee sufficient latitude to inform others of its patent rights without
> subjecting itself to jurisdiction in a foreign forum. <u>A patentee should not subject
> itself to personal jurisdiction in a forum solely by informing a party who happens
> to be located there of suspected infringement. Grounding personal jurisdiction on
> such contacts alone would not comport with principles of fairness.</u>

(citations omitted) (emphasis added) (second alteration in original). *See also Avocent Huntsville*

*Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1333 (Fed. Cir. 2008) ("[L]etters threatening suit for patent

infringement sent to the alleged infringer *by themselves* do not suffice to create personal

jurisdiction.") (citation omitted); *New World*, 859 F.3d at 1037–38 ("Under the third part of the

test . . . this court has held that it is improper to predicate personal jurisdiction on the act of sending

ordinary cease and desist letters into a forum, without more.") (citation omitted).

Plaintiffs cite two cases for the proposition that demand letters sent into the forum alone

may alone suffice to establish personal jurisdiction over the sender, *Jack Henry & Associates, Inc.*

*v. Plano Encryption Technologies LLC*, 910 F.3d 1199 (Fed. Cir. 2018) and *Bancroft & Masters,*

*Inc. v. Augusta National, Inc.*, 223 F.3d 1082 (9th Cir. 2000).[5] Both are distinguishable from the case at hand. In *Jack Henry*, the defendants sent demand letters to eleven different banks conducting business in the forum, all regarding infringement of the same patent (the one at issue in the case). 910 F.3d at 1204. In contrast here, Veolia's only alleged enforcement activity in the forum is the single infringement letter it sent to WesTech. While personal jurisdiction does not turn solely on the number of infringement letters sent into the forum, Veolia's alleged enforcement efforts in the forum are certainly less significant than those of the defendants in *Jack Henry*.[6] And in *Bancroft*, the letter sent by the defendants required the plaintiff to "bring suit [for a declaratory judgment] or lose control of its website."[7] 223 F.3d at 1087. In the present case Veolia's letter to Plaintiffs did not require Plaintiffs to bring suit or cease marketing their allegedly-infringing products. Rather, pursuant to the parties' previous settlement agreement, the letter triggered the ninety-day period during which the parties could negotiate a resolution of their dispute. *See* ECF No. 2-3 at 2–3.

---

[5] While *Bancroft* is a Ninth Circuit case, the Federal Circuit cited it favorably in *Campbell Pet Co. v. Miale*, 542 F.3d 879 (Fed. Cir. 2008).

[6] In addition, the dispute in *Jack Henry* was over venue; the court analyzed specific jurisdiction only to determine whether venue was proper. *Id.* at 1201. This fact colored the court's analysis. *See id.* at 1206 ("[The] concern [for the burden on the defendant] is even more potent when it relates to a challenge to venue, for venue 'is primarily a matter of choosing convenient forum.'" (citation omitted)). And the *Jack Henry* court, in considering whether venue was fair and reasonable, noted that the defendant was "subject to general jurisdiction in the [forum] and [was] registered to do business throughout the state." *Id.* at 1205.

[7] Specifically, under the dispute resolution policy agreed to by the parties in that case, the plaintiff had three options: "(1) voluntarily transfer the masters.com domain name to ANI; (2) allow the domain name to be placed 'on hold,' meaning that it could not be used by either party; or (3) obtain a declaratory judgment establishing its right to use the masters.com domain name." *Bancroft*, 223 F.3d at 1085.

Because the court is unpersuaded that Veolia's demand letter alone suffices to create personal jurisdiction over it in this forum, the court must determine whether Veolia has directed "other activities" at the forum. *Avocent*, 552 F.3d at 1333. These other activities must materially relate to "the enforcement or defense of the patent." *Id.* at 1336. Thus, "a patentee's own commercialization efforts" should not be considered, because they are not related to the defense or enforcement of the patent. *See Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1020 (Fed. Cir. 2009).

The "other activity" on which Plaintiffs rely is the licensing agreement between Veolia and Kruger. Entering into an exclusive licensing agreement with a licensee that either "resides or regularly does business in the forum" may suffice to create personal jurisdiction over a defendant. *New World*, 859 F.3d at 1038 (citing *Avocent,* 552 F.3d at 1334). However, "the mere existence of an exclusive license does not support a finding of specific jurisdiction." *Id.* Rather, "the question of specific jurisdiction over a nonresident patent holder in a case involving an exclusive license 'requires close examination of the license agreement.'" *Id.* at 1039 (citing *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1366 (Fed. Cir. 2006)). Federal Circuit precedent "requires that the license agreement contemplate a relationship beyond royalty or cross-licensing payment, such as granting both parties the right to litigate infringement cases . . . ." *Breckenridge*, 444 F.3d at 1366. "What matters, then, is whether the agreement between the patent holder and the exclusive licensee imposes an obligation on the patent holder to enforce or defend the patent on behalf of the licensee that is engaged in exploiting the patent rights in the forum state." *New World,* 859 F.3d at 1039.

In short, the court must analyze the terms of any licensing agreement to determine whether the exclusive licensee's conduct in the forum is related to the *enforcement or defense of the patent*

*at issue* and not merely marketing or commercialization efforts. *See id.* at 1039 (citing *Avocent*, 552 F.3d at 1334). If, for example, the terms of the agreement obligate Veolia to litigate claims related to the '971 patent, and/or grant both parties the right to do so, then the licensing agreement may suffice to create personal jurisdiction over Veolia. *See id.* at 1038, 40; *Breckenridge*, 444 F.3d at 1366. But if the licensing agreement provides that Veolia retains discretion or control over patent enforcement decisions, then its relationship with Kruger would likely not suffice to create personal jurisdiction in this forum. *See id.* at 1043 (finding that defendant was not subject to personal jurisdiction because it "retain[ed] nearly complete control over the patent enforcement decision.").

Plaintiffs cite *Genetic Veterinary Sciences, Inc. v. LABOKLIN GmbH & Co. KG*, 933 F.3d 1302 (Fed. Cir. 2019) for the proposition that a licensing agreement with an entity doing business in the forum suffices to create personal jurisdiction. The Federal Circuit panel in *Genetic Veterinary* considered the terms of the defendants' exclusive licensing agreement, which gave the exclusive licensee the right to litigate patent infringement claims and obligated both the patentee and the licensee to consult with the other before sending an infringement letter. 933 F.3d at 1307. The Federal Circuit found that LABOKLIN, the exclusive licensee, was "not merely a remote patentee assisting a U.S. company with enforcement[;] instead, it [*was*] the U.S. enforcer," and was therefore subject to the court's personal jurisdiction. *Id.* at 1311 (citation and internal quotation marks omitted).[8] Thus, this case supports to the proposition that a "close examination" of the terms of the licensing agreement is necessary to establish personal jurisdiction. *New World*,

---

[8] In *Genetic Veterinary*, the exclusive licensee within the forum, LABLOKIN, and not the patent holder (the University of Bern), was the subject of the court's specific jurisdiction analysis. 933 F.3d at 1307–08. Here, Veolia is the patent holder, not the exclusive licensee. This further supports the court's conclusion that *Genetic Veterinary* does not compel the exercise of personal jurisdiction over Veolia in this case.

859 F.3d at 1038 (citation omitted). Here, unlike in *Genetic Veterinary*, the court is unable to analyze Veolia's enforcement obligations within the forum. Plaintiffs have not alleged the terms of the licensing agreement, and neither party included the agreement as an exhibit to the complaint or to the briefing submitted on the present Motion. [9] The court is therefore unable to conclude that exercising personal jurisdiction over Veolia in this case would be fair or reasonable.

## CONCLUSION AND ORDER

For the foregoing reasons, the court hereby ORDERS that Defendant's motion to dismiss for lack of personal jurisdiction is GRANTED. Plaintiffs' action for declaratory judgment is DISMISSED without prejudice.

DATED November 20, 2020.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge

---

[9] Plaintiffs could have asked the court for limited jurisdictional discovery to ascertain the terms of Veolia's licensing agreement with Kruger but did not do so. Nor did they allege anything about the licensing agreement beyond its existence.

12